Good morning, your honors. May it please the court. Elizabeth P. Uribe for the petitioner, Paola Palacios. I would like to reserve two minutes for rebuttal. At issue in this case is whether Mrs. Palacios' actions constitute an affirmative act to alien smuggling as defined by this court in Altamirano and Aguilar-Gonzalez when she declined to smuggle her friend's sister and told her friend to, she said no, then she said, ask my husband. She subsequently went with him to Mexico, was present in the vehicle during the smuggling attempt. This case- You've left out that she agreed to lie about all of this if questioned by Customs and Border Protection. Your honor, our position and- Well, your position is one thing, the findings of fact that we have to deal with may be another. So the IJ found that your client placed her friend in contact with her husband for the purpose of transporting inadmissible aliens to the United States, drove her husband to pick up a passport for use in the attempt at smuggling, traveled with her husband to Tijuana to pick up an inadmissible alien, and agreed with her husband to disclaim any knowledge of the alien's residency or citizenship if questioned. Those are the facts found by the IJ. Am I right or wrong? Your honor, this case raises a mixed- Am I right or am I wrong about the findings of fact? That is correct. That was the judge's finding. Okay, and that's what we have to deal with. So we have to question whether this is simply mere presence or acquiescence. Under Alta Morano and the other case that deals with this, Aguilar-Gonzalez. Yes, your honor. The judge and the board's finding that Mrs. Palacios put Sonia and her husband in touch or that she referred them is reviewed by substantial evidence. We're not contesting that she said talk to my husband. So we start with these facts? Yes, your honor. However, whether her acts constituted alien smuggling is a legal question reviewed. That's true, but we have the Alta Morano case which deals with acquiescence, and to me it seems that these facts go beyond either one of those situations. Well, it is different, your honor. I would argue that her case is most similar to the Aguilar-Gonzalez case. Mrs. Aguilar in that case was asked by her father if he could use her son's U.S. birth certificate to attempt to smuggle an infant to the United States. She said no on two occasions. On the third time he asked her the question, she gave in and she said yes. She acquiesced. In this case, Mrs. Palacios never said yes. She never said yes, I will help. I will help in the planning. The one factor that seems to jump out at me is this agreement to disclaim any knowledge and to deceive the border patrol officials. Your honor. That's awfully much not like acquiescence. I mean, if you've entered into a conspiracy to lie to the federal government, it seems like something quite different than you had in those other two cases. Your honor, what's actually in the record is not that Mrs. Palacios was going to lie about the passport or lie and say that they were asked to bring her over. What Mrs. Palacios said and is in the record, it is that Sonia, who was the friend and Sonia's brother, asked them, and by them it means Mrs. Palacios and her husband, for a ride. So she's not contesting that this person in Mexico asked them for a ride. She said, they asked us for a ride. And as to the passport, there was, in her sworn statement, she said that what they would say was that the brother and Sonia gave the passport to the husband and that he would deliver it. Yeah, we would say that Rocio had a passport and that they had asked us for a ride. That's correct. So she agreed to lie and say he had a passport. No, she's not lying about, she's not in that statement not saying that that is Sonia's passport. I mean, Rocio's the alien that was with them in the vehicle. So we're supposed to consider that as Rocio had a passport? No, it's supposed to be taken in the totality. With everything that's in the record, she acknowledged that she was present in Sonia's house. She overheard when Sonia and her husband discussed where they would be picking up Rocio in Mexico. Sonia gave Mrs. Palacios' husband Sonia's own U.S. passport and took it to Mexico, picked her up at the hotel. So she overheard the conversation. She was present in the vehicle, went to Mexico with her husband. Are you saying that she denied that there was any agreement? I mean, I read this as they had agreed that if anybody asked, they're going to falsely say he had a She is not denying that there's an agreement, but she was not involved in making that agreement or in that planning. Well, did she agree with somebody to make false statements to the government or not? No, Your Honor. She's stating that she knows the passport belongs to another person and she knows that that person gave it to her husband to attempt to smuggle her into the United States. So again, similar to Aguilar-Gonzalez, she was present in the vehicle. She did have knowledge. She knew what was going to happen. She never participated in making these arrangements. She went with her husband. The husband gave the documentation, the passport, to Rocio. He's the one that handed it over to the agent at the border, and it's similar to the petitioner in Aguilar. She was present. She had knowledge. She knew what was going on, but that is not an affirmative assistance as the alien smuggling statute requires. Knowingly encouraging, inducing, assisting, aiding or abetting an alien to enter the United States. The judge and the board's finding that she somehow put her husband and Sonia in touch and that she referred him is not supported by substantial evidence in the record. She made no further statements after she said talk to my husband. She didn't even tell her husband that Sonia had approached her with this unusual request. Sonia and the brother went out of their way to contact her husband on their own, and she didn't find out about it until after her husband told her that he'd been contacted. And at the time, he told her that he was only thinking about it. So, again, Sonia, Mrs. Palacios, never agreed, never stated that Sonia gave both of them the passport. The record shows that Sonia gave the passport to Mrs. Palacios' husband, and also in the government stating that, Mrs. Palacios said that she looked at that passport and said that it looked like Rocio. Again, that's not supported by the record. As the record shows, she saw Mrs. She saw Rocio when they picked her up, and when she stated that they looked alike, it wasn't because she was looking at the passport. It's because she knows what her friend looks like. Thank you, Your Honor. I would like to reserve the rest of my time for rebuttal. Thank you. Ms. Martin. May it please the Court. Substantial evidence supports the agency's determination that the petitioner, Paula Palacios, encouraged, assisted, aided, or abetted another alien in illegally entering the United States, as stated in 1182A6E. In particular, Palacios engaged in at least four affirmative acts that furthered an alien smuggling scheme of which she had full knowledge and the intent to see be successful. And those four affirmative acts are as follows. First, she, when her friend and babysitter, Sonia Flores de la Torre, approached her to ask her if she would help her in bringing her Palacios didn't tell her no. Although, in her sworn statement to Officer Kalunga, she admitted that she did feel like she had the ability to tell Sonia no. Instead, she referred Sonia to her husband and indicated that he might be willing to help her. So, as the first affirmative act, you have a referral. The second affirmative act is that on the Friday of that same week that Sonia approached her, Palacios picked up her husband from work and drove him to Sonia's house to pick up the passport. Her, in her sworn statement to Officer Kalunga, she admitted that she knew what she was doing at the time. In other words, in that she was aware that she was driving her husband to Sonia's house for the purpose of picking up the passport that an undocumented alien would use to try to enter the United States. So, the second affirmative act is her picking up her husband and driving her to Sonia's house to pick up the passport. The third affirmative act is her examining the passport along with her husband and agreeing that smuggling Rosio across the border would be easy because she resembled the photograph in Sonia's passport. So, there you have a third affirmative act of encouragement and assistance. And there was a fourth affirmative act when Palacios conferred with her husband and agreed that if they were apprehended at the border, they would tell the immigration officials or in effect lie to the immigration officials and say that they were unaware that Rosio did not have legal documentation to enter the United States and that they had merely agreed to give her a ride across the border. So, what's the testimony? Everybody's characterizing it. I want to make sure that the testimony fits the characterizations. Do you have it in front of you? I have it right over at Respondent's table. Why don't you grab it? Your Honor, the testimony in this case comes from Ms. Palacios' sworn statement to Officer Colanga. And what did she say about the agreement to do what? The agreement to bring an alien... No, the fourth point that I'm talking about. The fourth point. Oh, about the lying to immigration officials. I can give you a page number if you'll just give me a moment. Okay, pages 322 and 323. Why don't you read it for us? What was the plan if you were going to be caught? That's the officer. Excuse me, yes, that's Officer Colanga questioning Ms. Palacios. And the answer was? Well, that she had that passport and had asked us for a ride. And then this is a second officer, Officer Brown, stating, and that you didn't know that you were going, Ms. Palacios interrupts, that we didn't know. Uh-huh. So then Officer Brown asks Ms. Palacios, that was plan B if you were caught. And then Ms. Palacios nodded her head affirmatively. Okay, so plan B was to deceive and say we didn't know anything about it. Yes. All right, thank you. And that is what the agency found the Palacios's sworn statement to Officer Colanga provides the substantial evidence in this case to support the determination that she affirmatively acted to participate in an alien smuggling scheme and therefore was inadmissible to the United States as charged. The court should consider Palacios's affirmative acts in this case in light of her knowledge of both the details and the purpose of the alien smuggling scheme. Several of Palacios's statements to Officer Colanga demonstrated that she was aware of all of these details and the purpose of the scheme. For example, she stated that she was present when Sonia turned the passport over to her husband when they were at Sonia's house to pick it up and that she was aware of what the passport was. She stated at a different point in her sworn statement that she knew that Rocio lacked the legal documentation to enter the United States. But all of that so far to me is mere presence and acquiescence, arguably at least. Arguably yes, but you have that knowledge coupled with the affirmative acts that I described previously to the court. And if you take a look at those affirmative acts along with the fact that she was fully aware of the purpose and the details of the alien smuggling scheme as well as that she wanted to see its success, you have substantial evidence to support the agency's determination that this constituted alien smuggling. The evidence that she not only was aware of the alien smuggling scheme, of its purpose, and committed several acts that furthered the alien smuggling scheme, the record also has evidence that she desired to see its success. For example, she stated to Officer Kalunga that during the meeting between herself, her husband, and Sonia, she was in agreement with everything that was happening. She also testified, or excuse me, she also stated to Officer Kalunga that Sonia was her friend of three years and sometimes babysat her get a job in the United States. Specifically, Sonia had taken her brother to see an employer and had referred her brother to the employer with knowledge that Palacios' brother didn't have the legal authorization to work in the United States. So you not only have evidence in the sworn statement of both her knowledge of the scheme and her acts that furthered the scheme, but there's also substantial evidence that she succeeded. And for this reason, the agency's decision doesn't violate Altamirano. It doesn't violate the court's subsequent decision in Aguilar-Gonzalez. In particular, in both of those cases, all you had was passive acquiescence plus presence in a vehicle when the illegal or the illegal attempt to cross the border is taking place. And what takes this case beyond Altamirano and Aguilar-Gonzalez is that you have the full knowledge of the scheme coupled with at least four affirmative acts that Palacios knowingly took with the desire to see the scheme's success. It is further the government's position that Palacios has waived any argument regarding her evidentiary objections that she presented to the immigration judge in this case because she has failed to raise any argument regarding that evidence or to preserve those evidentiary objections in her opening brief before the court. If your honors don't have any questions of me, I'll briefly conclude. Palacios has failed to demonstrate that the record compels the finding, that she did not participate in alien smuggling. Accordingly, the court should deny the petition for review in this matter. Thank you. Thank you. Ms. Uribe, I think you've reserved a couple of minutes. So your view is that the husband was the smuggler? Yes, your honor. He... And she was just there. She was there with knowledge. If she agrees with her husband to enable both of them to lie out of it, isn't that more than acquiescence or mere presence? I think it's still very similar to the Aguilar case. She went with her father. She knew what the father was doing. She even sat next to that infant to make it look like... Was there any agreement in the other case to lie to the federal government so the smuggler could escape? There's no agreement that I'm aware of, your honor, but I would like to go back to the record on that same page 322... 3223, go ahead. Yes. Ms. Officer Brown is questioning Mrs. Palacios with Officer Kalunga. Ms. Palacios says, well, that she had that passport and that they had asked us for a ride. Again, I think that that they is very important because it goes back to who is the they that asked for a ride. It wasn't that she was saying that Ms. Sonia asked for the ride. She's affirming that Sonia and her brother asked for the ride. I'm talking about the agreement to lie to get the smuggler off. Right. And that is that same questioning where she asked, that was plan B, if you were caught. So she's not saying that she's lying. She's saying that they asked for a ride. That doesn't contradict what happened. They were asked to smuggle her. She's saying it was as a ride. But she knows that she, and she says it in the record, she knows that she doesn't have the proper documentation. In this case, I don't believe that whether or not she was in agreement should be the focus. We have to go back to the alien smuggling statute. And what this court has stated is required to provide an affirmative assistance to alien smuggling. Whether she agreed with what her husband and Sonia planned and whether she had knowledge and was present is one thing. But whether she took an affirmative act and helped them smuggle her is another issue. In this case, she did not, although she may have agreed, she did not violate the alien smuggling statute. Again, when she went and picked up her husband and took her to Sonia's house, she wasn't at that time fully aware of what the plan was going to be.  So going to Sonia's house, you can't, she didn't have a full awareness of what Sonia was going to ask them to do that night, that she was going to give them the password. Yes, she overheard it and she went along with her husband. All the way until you get to this agreement to throw off the border patrol by enabling the alien smuggler to say no. Your Honor, I don't believe that that is supported in the record, that she did say they were going to, they asked us for a ride. Later on, she came out right and stated why she was there. She was truthful in what she overheard, why she was there, that she had knowledge. And in her stating that she agreed, I mean, with what was going on, it simply was that she didn't wish for her husband to get caught. She didn't want to get entangled in this. In that sense, she wanted it to be successful. I'm out of time, Your Honor, unless there's any other questions. Thank you very much. Palacios v. Holder is submitted, and the next case is Caraman v. Horrell.
judges: Duffy, Trott, Bybee